# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-1051
_____

Atif F. Bhatti; Tyler D. Whitney; Michael F. Carmody

*Plaintiffs - Appellants*

v.

Federal Housing Finance Agency; Department of the Treasury; Janet L. Yellen, in her official capacity as Secretary of the Treasury; Sandra L. Thompson, in her official capacity as Acting Director of the Federal Housing Finance Agency

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 14, 2024
Filed: March 28, 2024
_____

Before SMITH, Chief Judge,[1] BENTON, and STRAS, Circuit Judges.
_____

BENTON, Circuit Judge.

Atif F. Bhatti and two other shareholders of Fannie Mae and Freddie Mac sued the Federal Housing Finance Agency and Department of the Treasury, claiming

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

harm from the unconstitutional removal restriction of the Housing and Economic Recovery Act of 2008, 12 U.S.C.A. § 4512(b)(2). The district court[2] dismissed Bhatti's claims, finding that he did not adequately plead any harm. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The facts of this case are outlined in this court's opinion in *Bhatti v. Federal Housing Finance Agency*, 15 F.4th 848, 852 (8th Cir. 2021), applying *Collins v. Yellen*, 141 S. Ct. 1761 (2021) and remanding to the district court. Bhatti amended his complaint, targeting the Treasury's liquidation preference. Under this provision, in the event of liquidation, the "Treasury will be entitled to recover the full amount of its preference before any other stockholder receives payment," thus depressing the value of the shareholders' interests in Fannie Mae and Freddie Mac. ***Bhatti v. Fed. Hous. Fin. Agency***, 646 F. Supp. 3d 1003, 1008 (D. Minn. 2022).

Bhatti argued that shareholders were harmed by the unconstitutional director-removal limitation. They believe that without it, President Trump would have removed Melvin L. Watt and appointed a new director to end the preference.

Bhatti brought four claims, one constitutional and three under the Administrative Procedure Act. The district court granted the FHFA's motion to dismiss all claims with prejudice. On appeal, Bhatti argues that he adequately pled a claim for relief. He primarily argues that, based on a Trump letter and other circumstantial evidence, his claims satisfy one of the two *Collins* hypothetical scenarios that would justify relief.

---

[2]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

II.

This court reviews de novo the grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). "[A]fter *Collins*, a party challenging agency action must show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused (or would cause) them harm." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 632 (5th Cir. 2022).

In Count 1, Bhatti argues that the shareholders were harmed by the FHFA's director-removal restriction (which the Supreme Court found unconstitutional) and are entitled to an order ending the Treasury's liquidation preference. *See Collins*, 141 S. Ct. at 1787 ("[T]he statute unconstitutionally limited the President's authority to remove the confirmed Directors."). The district court here accurately summarized Bhatti's argument:

> Had Trump been able to appoint his chosen director in January 2017 instead of having to wait until January 2019, plaintiffs allege, the Trump administration would have achieved these goals [ending conservatorship]—and, according to plaintiffs, in the course of achieving these goals, the Trump administration would have eliminated the liquidation preference.

*Bhatti*, 646 F. Supp. 3d at 1009.

In *Collins* the Supreme Court noted two situations where harm from an unconstitutional removal restriction "cannot be ruled out." *Collins*, 141 S. Ct. at 1789.

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with

actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* On appeal, Bhatti primarily asserts that the facts here fall within the second *Collins* hypothetical.

He relies on a 2021, post-presidency letter from Trump to Senator Rand Paul as a "public statement expressing displeasure." Addressing the *Collins* opinion, Trump writes:

> In a recent ruling, the Supreme Court has recognized that my Administration was denied the ability to oversee the work of the FHFA in violation of the Constitution. The Supreme Court's decision asks what I would have done had I controlled the FHFA from the beginning of my Administration, as the Constitution required. From the start I would have fired former Democrat Congressman and political hack Mel Watt from his position as Director and would have ordered the FHFA to release these companies from Conservatorship. My Administration would have also sold the government's common stock in these companies at a huge profit and fully privatized the companies. . . .

The district court correctly found that Trump's statement does not satisfy the second *Collins* hypothetical. The Court there described a situation where the President (1) "had made a public statement," (2) "express[ed] displeasure with actions taken by Director," *and* (3) "asserted that he *would* remove the director" if not for the statute. *Id.* (emphasis added).

*Collins* envisions a situation where the statement is made during the presidency, not after. The hypothetical calls for a statement that the president "would" remove the director, not a post-hoc statement that he "would have" removed the director. This is supported by the first hypothetical, which requires the president to have made an attempt to remove the Director during the presidency. *Id.* ("Suppose, for example, that the President had attempted to remove a Director but

was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal."). Bhatti does not allege that, during his presidency, Trump publicly criticized Watt.

It is also doubtful that Trump's letter was "public" in the way that the Supreme Court envisioned. *Id.* The letter itself, a direct correspondence with a Senator, later appeared on a website. While the Supreme Court did not define what qualifies as a "public" expression, it is questionable, at best, whether the anonymous posting of a private letter on a third-party website is what the Supreme Court had in mind.

The premise of Bhatti's argument is that but for Trump's inability to remove Watt, the administration would have ended the liquidation preference. Critically, Trump's letter states only a broad desire to end the conservatorship. The letter at no point attacks or even mentions the liquidation preference itself. True, eliminating the preference altogether may have been one path to ending the conservatorship. It was, however, not the only means, as the Trump administration's correspondences show. For example, a 2019 Treasury report said that reducing the Treasury's interest was one "[p]otential approach," but also listed other ideas, such as placing the companies into receivership. In fact, another Trump administration statement on housing reform mentioned guaranteeing the companies' "ongoing payment" to the Treasury, yet said nothing about eliminating the liquidation preference. *See also Collins*, 83 F.4th at 983 (analyzing nearly identical facts as here, including the same Trump letter, the Fifth Circuit held that "the complaint fails to plausibly allege 'a nexus between the desire to remove and the' Trump administration's failure to exit the conservatorships and return the companies to fully private control.").

As the Supreme Court noted when initially addressing the harm issue: "In the present case, the situation is less clear cut" than in the hypotheticals. *Collins*, 141 S. Ct. at 1789. Trump's post-presidency letter does not satisfy the *Collins* hypothetical.

The district court also correctly found that Bhatti's purported circumstantial evidence of harm was speculative and failed to plausibly state a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

The reports, statements, and releases cited by Bhatti as circumstantial evidence suggest that the Trump administration, at some point, determined that it would like to end the conservatorships. These statements do not, however, make clear that the administration saw total removal of the preference (that Bhatti seeks) as the only means to achieving this end, or that Watt stood in their way of attaining this goal. Most of the statements Bhatti cites show a general goal of removing the companies from conservatorship (a goal Watt agreed with), not the specific step of ending the liquidation preference. These statements confirm that this was only one of many potential alternatives to privatizing Fannie Mae and Freddie Mac.

Bhatti does not plausibly allege that the inability to remove Watt frustrated the administration's goals of ending the conservatorship. As many circuits have ruled, the harm claimed by the shareholders (here, lost profits due to the Treasury's liquidation preference) must be connected in some way, or share some nexus with, the president's inability to remove Watt. *See generally, e.g.*, *CFSA v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("We distill from these hypotheticals three requisites for proving harm: (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor."); *Bayview Loan Servicing, LLC v. 6364 Glenolden St. Tr.*, 2021 WL 4938115, at *2 (9th Cir. Oct. 22, 2021) (unpub.) ("[T]he Trust could pursue a *Collins*-style damages claim against FHFA only by causally linking a specific, tangible harm to the for-cause removal provision, but it failed to do so in any of its filings."); *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (Plaintiff "must show that the agency action would not have been taken *but for* the President's inability to remove the agency head."). Bhatti failed to plausibly plead the requisite connection or causation. "The

*Collins* Court was not deterred from its holding by the very possibility that harm *might* occur; rather, it indicated that a more concrete showing was needed." ***Calcutt v. FDIC***, 37 F.4th 293, 317 (6th Cir. 2022), *rev'd on other grounds by* 598 U.S. 623, 624–25 (2023).

Bhatti relies on a small part of a podcast interview with a Trump-administration housing-finance advisor, Craig S. Phillips, to support his contention that Watt was a roadblock to the administration's goals—"we need to wait really for Director Watt's term to end to and to have our appointee," so "[t]he decision was made to wait for a nominee," before implementing Trump's housing agenda. The district court correctly noted, however, that the rest of the interview "actually *undermines* plaintiff's allegations," as Phillips goes on to note other reasons for the lack of reforms (including deficit concerns and greater tax and bank reform priorities). ***Bhatti***, 646 F. Supp. 3d at 1014. Phillips also says that Watt "felt very strongly" about ending the conservatorships, had similar views to Trump-appointee Director Mark A. Calabria, and "would have actually done almost anything we wanted him to." ***Id.***

Bhatti did not plausibly plead that Trump's inability to remove Watt harmed the shareholders. The APA claims (Counts 2–4) fail for the same reason. *See* ***Collins***, 141 S. Ct. at 1790 n.1 (Thomas, J., concurring) ("Even assuming they raised their constitutional claim under the APA, it would not change the analysis; the shareholders would need to show they suffered an injury traceable to a Government action that violates the Constitution."). The district court properly dismissed Bhatti's claims.[3]

---

[3]As Bhatti failed to state a claim for relief, it is unnecessary to address whether the claims were barred by the anti-injunction provision of the Housing and Economic Recovery Act, 12 U.S.C. § 4617(f).

\* \* \* \* \* \* \*

The judgment is affirmed.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the court's conclusion that the shareholders have failed to plausibly connect the dots between the restrictions on the removal of Federal Housing Finance Agency Director Melvin Watt and the continuation of the liquidation preference. I would start and end the analysis there.

_____